IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:
**MEGAN LYNNE BROWN CRAMER**              Case No.09-14939 -RGM
     Debtor.                                  Chapter 7

_____

**FRANK E. BROWN, JR.**
**AND**
**WENDY E. BROWN,**
    Plaintiffs,

v.                                        Adversary: 09-01415-RGM

**MEGAN LYNNE BROWN CRAMER,**
    Defendant.

## BROWN'S FIRST AMENDED ADVERSARY PROCEEDING OBJECTING TO THE DISCHARGE OF THE DEBTOR/COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT

The interested creditors, Frank E. Brown, Jr., & Wendy E. Brown, by counsel, ("the Browns") object to the discharge of the debtor, Megan Lynne Brown Cramer and complain against the debtor to determine the dischargeability of the debt to these creditors. In support of this adversary proceeding, the Browns assert the following:

**JURISDICTION AND VENUE**

1. The debtor filed a petition under Chapter 7 of the Bankruptcy Code on June 19, 2009.

2. This is a core proceeding.

3. This court has jurisdiction under 28 U.S.C. §157(a), §1334, and venue under 11 U.S.C. §1409(a).

William M. Cusmano, Va Bar #26713
William M. Cusmano, P.C.
2000 N 14th St, #210
Arlington, VA  22201
703-527-1775
703-524-7610 (facsimile)
wcusmano@aol.com

**PARTIES**

4. The creditors, Frank E. Brown, Jr., and Wendy Brown, are individuals residing at 12308 Popes Head Road, Fairfax, Virginia 22030.

5. Megan Lynne Brown Cramer is an individual with a mailing address of P.O. Box 592, Middleburg, Virginia 20118.

6. The debtor is the niece of the Browns and thereby occupies a position of trust with respect to the Browns.

**FACTS**

7. On or about April 14, 2008, the debtor, on behalf of a limited liability company (MLBC, LLC, "MLBC") of which the debtor was sole principal, borrowed the sum of $190,000 by a document entitled "Credit Line Note," attached, which the debtor executed on behalf of MLBC.

8. The debtor, also on behalf of MLBC, further executed a Security Agreement covering all of the assets of MLBC.

9. Because the debtor is or was the sole principal of MLBC, she therefore was an insider to MLBC for all relevant purposes under the Bankruptcy Code.

10. The debtor, along with Natalie Cramer and Peyton Randolph Tucker Cramer, further executed a Personal Guaranty, individually guaranteeing the obligations undertaken by MLBC to the debtors.

11. The debtor borrowed these sums and executed these documents in furtherance of the debtor's plan to own and operate a business to be known as "Sangold's Gourmet Bakery."

12. To induce the Browns to lend the borrowed sums, the debtor, with the cooperation and participation of her parents, Natalie Cramer and Peyton Randolph Tucker Cramer, made certain representations to the Browns.

13. Among these representations, without which the Browns would not have lent the borrowed sums, were that the debtor possessed certain skills and experience involving the running and operating of a food service business.

14. Among these representations, without which the Browns would not have let the borrowed funds, was a written business plan.

15. For certain other responsibilities of running and operating a food service business, Natalie Cramer and Peyton Randolph Tucker Cramer represented to the Browns that they would assist the debtor, without which representations the Browns would not have lent the borrowed sums.

16. On information and belief, these representations by the debtor as well as by Natalie and Peyton Randolph Tucker Cramer were untrue when made or exaggerated to the point of being untrue.

17. On information and belief, the debtor, with the cooperation and participation of her parents, exaggerated to the Browns the breadth and depth of the debtor's food service skills and experience as well as their ability to assist the debtor in the venture.

18. After the money was lent, the debtor proceeded to operate the business, and the Browns lent additional funds to try to sustain the business.

19. The business faltered from the inability of the debtor to operate the business because of her lack of skills and experience.

20. The business faltered from the inability or unwillingness of the debtor's parents to help the debtor operate the business.

21. In or around late September of 2008, the debtor, with the cooperation and participation of Peyton Randolph Tucker Cramer, determined to sell certain assets of the business and in fact sold certain assets of the business.

22. The security agreement executed by the debtor prohibits the sale of such assets of the business.

23. The debtor and Peyton Randolph Tucker Cramer pursued the sale without regard to the security interest of the Browns or the security agreement prohibiting such sale.

24. The proceeds of the sale are currently unaccounted for by corroborating documentation. Documentation of the same was requested by the Browns and ordered to be produced pursuant to FRBP 2004, but documentation has not been produced; bank records that might have shown whether these amounts were deposited to the MLBC account are inexplicably missing from produced materials. According to the debtor, documents surrounding the sale are in the possession of hr father, Peyton Randolph Tucker Cramer, but she has declined to obtain them from him, leading the Browns to conclude that the proceeds were misappropriated, in addition to the violation of the security agreement.

25. In approximately January of 2009, as the business slid into bankruptcy, on the eve of filing for bankruptcy protection, the debtor arranged to sell certain other assets of the business.

26. These sales, too, were in derogation of the security agreement.

27. The proceeds of this sale are believed to have been distributed to Natalie Cramer and therefore misappropriated.

28. The bankruptcy filings of MLBC, prepared by Megan Cramer within one year of her filing, failed to account for these assets or the distribution to Natalie Cramer.

29. When the business began operating, the Browns further were induced by the same representations as above to guaranty the lease for MLBC.

30. After MLBC entered bankruptcy, the landlord for MLBC sought relief from the Browns based on their guaranty of the lease.

31. The Browns were able to compromise and resolve the obligations of the lease for payment to the landlord of additional sums.

32. With these additional amounts paid by the Browns, the total amounts owed by the debtor and the other guarantors equaled approximately $250,000.

**COUNT I -- OBJECTION TO DISCHARGE**

33. The Browns incorporate all allegations above.

34. 11 U.S.C. §727(a) prevents the debtor from receiving a discharge where the debtor has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, property of the debtor, or has concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information from which the debtor's financial condition or business transactions might be ascertained, or with respect to an insider, or otherwise committed disqualifying acts under 11 U.S.C. §727(a).

35. The above actions constitute disqualifying acts under 11 U.S.C. §727(a).

36. The above actions constitute disqualifying acts specifically under 11 USC §727(a)(2), (a)(3), (a)(4), (a)(5), and (a)(7).

Wherefore, the above premises considered, the Browns object to the discharge of the debtor and move for an order denying the debtor a discharge. The Browns move for such other relief as the Court deems appropriate.

**COUNT II -- NONDISCHARGEABILITY**

37. The Browns incorporate all allegations above.

38. Under 11 U.S.C. §523(a)(2), a debt may not be discharged to the extent such as the debtor incurred through false pretenses, a false representations, or actual fraud.

39. The entire debt of this debtor to these creditors was incurred through actions disqualifying the debt for discharge under 11 U.S.C. §523(a)(2).

40. The entire debt of this debtor to these creditors was incurred through actions disqualifying the debt for discharge specifically under 11 U.S.C. §523(a)(2)(A) or (B).

41. In the alternative, or in addition to, the debt of the debtor is disqualified from discharge to the extent of the value of the misappropriated assets for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny under 11 U.S.C. §523(a)(4).

WHEREFORE, the above premises considered, the creditors move for a determination that the debt of the debtor, Megan Lynne Brown Cramer, to the Browns be determined nondischargeable, and for judgment in that amount, up to and including to the value of the entire debt of $250,000. The Browns move for such other relief as the court deems appropriate.

/s/ William M. Cusmano  
William M. Cusmano, Va Bar #26713  
William M. Cusmano, P.C.  
2000 N 14th St, #210  
Arlington, VA  22201  
703-527-1775  
703-524-7610 (facsimile)  
wcusmano@aol.com  
Counsel for Brown

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon the below by placing a copy thereof, first class postage prepaid, and/or electronically this 15th day of September, 2010.

>Ronald J. Aiani, Esquire  
>RONALD J. AIANI, P.C.  
>86 East Lee Street  
>Warrenton, VA 20186
>
>United States Trustee, Region 4  
>Office of the US Trustee  
>115 S. Union St, #210  
>Alexandria, VA  22314
>
>Robert Ogden Tyler, Esq.  
>Tyler, Bartl, Ramsdell & Counts, P.L.C.  
>700 South Washington Street, Suite 216  
>Alexandria, VA  22314

/s/ William M. Cusmano
William M. Cusmano